DELAWARE RIVER TRANSPORTATION COMPANY, PROSECUTOR, v. INHABITANTS OF THE CITY OF TRENTON, RESPONDENT.

Submitted May 15, 1914—Decided May 22, 1914.

The act known as the "Hennessy act" (*Pamph. L.* 1914, *ch.* 144), approved April 9th, 1914, did not divest the city of Trenton, which had theretofore adopted the "Walsh act" (*Pamph. L.* 1911, *p.*

462), of the powers conferred upon the city by the "Harbor act" (*Pamph. L.* 1911, *p.* 233), since the "Hennessy act," in so far as it provides that all municipalities that have adopted the "Walsh act" "shall not be subject to any laws of this state except laws applicable to all municipalities of this state other than counties and school districts," contravenes article 4, section 7, paragraph 11 of the constitution prohibiting special laws regulating the internal affairs of municipalities.

On *certiorari*.

Before Justice TRENCHARD.

For the prosecutor, *Peter Backes* and *Gilbert Collins*.

For the respondent, *Charles E. Bird* and *Alfred Reed*.

The opinion of the court was delivered by

TRENCHARD, J.   This writ brings up for review proceedings taken on behalf of the city of Trenton for the condemnation of lands.

The proceedings were taken under the grant of power to condemn lands for harbor purposes found in *Pamph. L.* 1911, *p.* 233, known as the "Harbor act."

The order appointing commissioners was reviewed in this court by *certiorari*, and was affirmed.   *Delaware River Transportation Co.* v. *Trenton,* 85 *N. J. L.* 479.

Since this affirmation the legislature has passed the act known as the "Hennessy act" (*Pamph. L.* 1914, *ch.* 144) entitled "An act to amend and explain an act entitled 'An act relating to, regulating and providing for the government of cities, towns, townships, boroughs, villages and municipalities governed by boards of commissioners or improvement commissions in this state,' approved April twenty-fifth, one thousand nine hundred and eleven; as amended as to both its title and body by an act approved April second, one thousand nine hundred and twelve."   This act was approved April 9th, 1914.

The act which the "Hennessy act" purports to "amend and explain" is the act known as the "Walsh act," found in

*Pamph. L.* 1911, *p.* 462. This act provides for the government of cities, towns, townships, boroughs, villages and municipalities, by boards of commissioners; and by the terms of the act it was to apply to such municipalities as should by popular vote adopt it. The "Walsh act" was adopted by the city of Trenton on June 20th, 1911.

The act thus adopted contains a provision that wherever the word "city" or "cities" appears therein it shall be construed to mean "town" or "towns," "borough" or "boroughs" or other "municipality" or "municipalities."

It also provides, in section 8, that cities adopting it shall have power to enact ordinances, &c., and "shall have all powers necessary for its government not in conflict with the laws applicable to all cities of this state or the provisions of the constitution."

There was thus left in operation in the city of Trenton all pre-existing statutes thereto applicable, including the "Harbor act" of 1911.

Later, there was an amendment (see *Pamph. L.* 1912, *p.* 643) to the title and body of this "Walsh act." In section 3 of this amending act of 1912, section 4 of the "Walsh act" was amended so as to provide that "all acts, general or special, relating to such city, shall, except so far as inconsistent with this act, apply to such city, and such city shall have and exercise the powers and duties thereby conferred or imposed."

The previous situation still existed, namely, that all acts which had theretofore applied to the city of Trenton were still applicable; and so the "Harbor act," upon which the proceedings brought up rest, was in full force.

Then, on April 9th, 1914, the "Hennessy act" was approved, the effect of which, it is insisted by the prosecutor, is to strip the "Harbor act" of all force within the limits of the city of Trenton.

The "Hennessy act," by section 1, amends section 1 of the "Walsh act," so that it provides that all municipalities, except counties and school districts, that have heretofore adopted or shall hereafter adopt the "Walsh act" "shall be, and are hereby declared to be, a distinct class of municipalities, and

JUNE TERM, 1914.                51

*86 N. J. L.*        Del. River Trans. Co. v. Trenton.

shall not be subject to any laws of this state except laws applicable to all municipalities of this state other than counties and school districts."

Inasmuch as the "Harbor act" is not applicable to all municipalities, it is contended by the prosecutor that by force of the terms of the "Hennessy act" the "Harbor act" has ceased to be in force in the city of Trenton, or in any other city which has adopted the "Walsh act." And that is not all. It is contended with equal force that the effect is to deprive all such commission governed municipalities of the powers that they respectively theretofore had by virtue of that great body of statutes applicable only to the class of which the several municipalities were respectively members.

The language of the "Hennessy act" is clear and unambiguous. It declares that commission governed municipalities "shall not be subject to any laws of this state except laws applicable to all municipalities." There is, therefore, no occasion for construction or interpretation, but the act must be given effect by the courts, if constitutional. On behalf of the city of Trenton it is urged that, in respect to that provision, it is unconstitutional for several reasons. I think it is unconstitutional, for the reason I will now state.

I think that an attempt to restrict the operation of statutes theretofore operative in the city of Trenton, and all other cities, to those cities which had not adopted the "Walsh act," and *pro tanto* repeal those acts so far as respects the adopting cities, contravenes article 4, section 7, paragraph 11 of the constitution prohibiting special laws regulating the internal affairs of municipalities.

It goes without saying that the legislature could not constitutionally have selected those cities which afterwards adopted the "Walsh act" and legislate for them exclusively as a class. That would have been a glaring instance of special legislation.

The generality, in a constitutional sense, of the "Walsh act" rested upon the clause which permitted all of a class to vote upon the question of adoption of the act. *Warner* v.

*Hoagland,* 51 *N. J. L.* 62, 72; *In re Cleveland, Id.* 319; *Paul* v. *Gloucester County,* 50 *Id.* 585, 604.

While, however, the right of all of a class to adopt the "Walsh act" rendered that statute general, the vote upon the question of adoption, if favorable, did not bring into existence a group of municipalities which was general for all purposes of legislation. The fact that they were governed by boards of commissioners did not make them a class for all purposes of legislation. *Ross* v. *Winsor,* 48 *N. J. L.* 96; *Dobbins* v. *Long Branch,* 59 *Id.* 146.

Nor does the fact that the legislature in the "Hennessy act" has declared that the municipalities which adopted the act should be a class, solve the question whether all statutes applying exclusively to this group are specimens of general legislation.

The declaration by the legislature in this instance is no more conclusive than was its creation of an artificial classification theretofore existing; and of this classification Mr. Justice Depue said, in *Wanser* v. *Hoos,* 31 *N. J. L.* 482, 532, when speaking of the statute in question in that case: "That the cities or municipalities to which it applies had been properly classified for general municipality purposes, does not of itself furnish a sufficient reason for sustaining such legislation. Otherwise, the elaborate reasoning in *Ex parte Hayne,* 54 *Id.* 25; *Mortland* v. *Christian,* 52 *Id.* 521, and similar cases was superfluous. The court should simply have said, 'these cities have been legally classified, and the legislature may deal with their internal affairs in its discretion.' "

So, in *Calvo* v. *Westcott,* 55 *N. J. L.* 78, Mr. Justice Garrison said (at *p.* 80) that the Classification act (*Pamph L.* 1882, *p.* 47) "was a mere formula, a convenient method by which to avoid the repetition of words and numerals when legislating for or interpreting enactments concerning municipalities. Beyond this it is incapable of exercising any controlling effect either upon the legislature or the courts. * * * Its employment will not in the least degree tend to legitimize legislation otherwise vicious in a constitutional sense."

That classification can exist which will afford a foundation for generality for one class of statutes, and not for another, is conspicuous in the well-known group of cases in which statutes dealing with the structure of government, although based upon a classification by population, are sustained; while statutes based on the same classification, but dealing with other questions of charter powers, have been discredited.

Now, as already observed, when a new group of adopting municipalities sprang into existence by popular vote in the several places, each member of the group retained all the powers which had been possessed by the governing body of the old municipality. Aside from the provision dealing with the structure of government merely, the body of statutory and ordinance legislation covered by the old and the new coincided. There was no change in the physical condition or in the substantive grant of power to the municipality brought about by the change in the form of government. The only features in which the new under the "Walsh act" differed from the old were governmental.

While it may well be that a statute changing the method of electing the board of commissioners, or the division of the duties of the members of the board, or in other respects affecting the machinery of government in a manner peculiar to this group would be general legislation, it is difficult to see how a statute which deals with a power common to all cities, both those which did and those which did not accept the "Walsh act," can now be dealt with solely with respect to those which did adopt it, or in respect to those which declined to adopt it.

If the view be entertained that by the adoption of the "Walsh act" the adopting cities become a class, so that legislation for all purposes confined to that class would be regarded as general, the result likely to flow from this view would be quite remarkable. The legislature, instead of framing an entire charter and submitting it for adoption to a vote of a class, might, as it often does, pass a law applying to a single unimportant feature of the municipal government; and those of the class who adopted that insignificant change, would spring into a class and be freed from the requirement that

legislation should apply to all the old class to conform to the constitutional requirements.

For instance, an act making the mayors of cities of the second class hold a term for five years might be submitted to cities of that class. If adopted by one city, the legislature immediately on the heels of its adoption, could modify or destroy all the charter powers of that single city by an act applying to it alone.

. So, in the present case, after the electors had voted only upon the question whether the scheme of government proposed by the new statute was likely to be wiser and more efficient than the old system, the legislature seized upon the result of that vote to pass an act which radically changed all the powers of the new group without a popular vote and without applying the legislation to all cities invested with the powers thus affected. This, I think, was special legislation. With respect to the prosecutor's suggestion that if the view be taken that the adopting municipalities do not form a class in respect to the "Hennessy act," it would render the scheme unalterable except by another referendum, it is sufficient to say that I do not think such result necessarily follows. Without deciding that question it may be proper to suggest that in addition to the referendum, the legislature could pass acts including all cities of the old class from which the new group sprang, and so avoid the vice of special legislation. Moreover, as herein pointed out, it may well be that statutes affecting the machinery of government in a manner peculiar to this group of adopting cities would be general legislation.

The result is that the proceedings brought up for review will be affirmed, with costs.